opinion of the court
Dianne S. Gasworth, J.
In this holdover proceeding, the parties stipulated in writing, hereby made a part of the court records, that the determination of this court in this case could be made upon:
(1) The petition (marked court Exhibit No. 1)
(2) Tenant’s answer and amended answer (marked court Exhibit No. 2)
(3) The affidavit of Oscar Tandy, sworn to September 3, 1982 (marked court Exhibit No. 3)
(4) Petitioner’s memoranda of law (marked court Exhibit No. 4)
(5) Respondent’s memoranda of law (marked court Exhibit No. 5) and “without taking any other proof.”
The petitioner, New York City Housing Authority (the Authority), seeks a final judgment of possession against respondent, Bretta Sykes, of an apartment in the Ingersoll Houses, a Federally aided public housing project owned and operated by the Authority.
*294 From the stipulated documents, it appears that prior to August, 1981, one Atrah Reid was the record tenant of the apartment in question; that sometime during that month she advised the Ingersoll Houses management that she was leaving for California where she expected to remain for some months in order to visit her brother who was in the final stage of illness; that she promised the Authority that she would continue to pay her rent while she was away and that she was leaving her keys to the apartment with a male friend. The Authority advised her that under the circumstances it would have no objection to that arrangement. However, the rent did not continue to be paid and as a result a nonpayment proceeding was commenced against Atrah Reid since “it was she who was entitled to the occupancy and enjoyment of the apartment and was obliged to pay the rent.”
Shortly after the service of the notice of petition and petition, the Authority was informed by a caseworker for the Department of Social Services (DOSS) that one Bretta Sykes was residing in the apartment. It appears that the male friend to whom the keys had been entrusted turned them over to Sykes. •
After ascertaining those facts, the Authority told DOSS that Sykes would be permitted to occupy the apartment on a temporary basis as a guest of the tenant Atrah Reid (with no right to permanent possession and only so long as Mrs. Reid’s rent was paid). As a result of that advice, DOSS issued a check dated January 19,1982 made payable to the joint order of Bretta Sykes and the Authority, but good only for deposit by the Authority. That check was accepted and cashed by the Authority which thereafter accepted the amount of the rent for “use and occupancy” from the respondent. From the time she moved in, Bretta Sykes has continued to occupy the apartment.
In February, 1982, the tenant of record, Atrah Reid, returned to New York and asked Bretta Sykes to vacate the apartment and upon her refusal to do so, demanded that the Authority oust Bretta Sykes and put her, Atrah Reid, in possession of the apartment. Hence, this proceeding.
*295 The respondent Sykes in her amended answer contends that “The landlord’s conduct constituted acceptance of Sykes as a tenant in the subject premises” and that “the conduct of the landlord estops the landlord from terminating the occupancy of the tenant Sykes” since “the landlord accepted checks drawn to the order of ‘Sykes, B. and NYCHA’.”
In his memorandum of law, counsel for respondent argues that “If there was any impropriety with regard to the manner in which Sykes took occupancy; then the conduct of the landlord has since converted the occupancy into a tenancy” because “when a landlord has accepted rents for a period, the landlord can no longer deny the tenant.”
He then says that the acceptance of rent from Sykes, putting her name on the mailbox, making repairs and painting the apartment, as it would have for any new tenant all taken together “constitute a waiver of any rights it might have had to evict Sykes.”
While it is true that in the ordinary case a certain species of conduct by a landlord may estop him from claiming that the occupant is not his tenant, we are not here dealing with the ordinary type of landlord, but with a governmental agency, the New York City Housing Authority, which under the applicable statutes has the right, duty and power to set standards, regulations and rents and to determine the procedures for creating the status of tenancy (Public Housing Law, § 37, subd 1, par [w]; §§ 154, 156).
Furthermore, unlike other landlords, it is not subject to rent control or to rent stabilization. (Administrative Code of City of New York, ch 51, tit Y, § Y51-3.0, subd e, par 2, cl [f]; § Y51-6.0, subd e [rent control]; ch 51, tit YY, § YY513.0, subd a, par [1], cl [a] [rent stabilization]; and see Emergency Tenant Protection Act of 1974, L 1974, ch 576, § 5, subd a, par [2], as amd; and see, also, New York City Housing Auth. v Colon, 66 Misc 2d 654.)
The status of a tenant in a public housing project can only be acquired under procedures formulated by the Authority (Matter of Vinson v Greenburgh Housing Auth., 29 AD2d 338; Manigo v New York City Housing Auth., 51 *296 Misc 2d 829, affd 27 AD2d 803, mot for lv to app den 19 NY2d 583, cert den 389 US 1008), and the doctrine of waiver or estoppel is inapplicable when the status of the person claiming to be a tenant does not come within those formulas (see, e.g., Rubel Corp. v City of New York, 274 App Div 925; Matter of Rochester Tr. Corp. v Public Serv. Comm., 271 App Div 406, 411), since the Authority is acting in a governmental capacity (Public Housing Law).
Thus in this case, even if it be assumed that an employee of the Authority agreed to accept Sykes as a tenant, in derogation of its rules, his act would not be binding upon or estop the Authority from rectifying his error (Matter of New York City Housing Auth. v Blyden, NYLJ, May 7, 1979, p 13, col 5, [App Term, 2d Dept], lv to app den by App Div NYLJ, Sept. 21, 1979, p 12, col 2).
To hold that under the circumstances of this case, Bretta Sykes would be entitled to continue occupancy of public housing would permit a circumvention of the procedures for obtaining public housing and give her a preference to which she is not entitled.
Under the stipulated facts and the fair inferences to be drawn therefrom, the court finds that Bretta Sykes occupied the premises in question as a temporary licensee who must remove therefrom now that the tenant of record is asserting her claim to occupancy.
Judgment is directed accordingly and respondent is given a 15-day stay of execution.